| STATE OF TENNESSEE 30th JUDICIAL DISTRICT CHANCERY COURT AT MEMPHIS | **SUMMONS** | DOCKET NUMBER CH- 09-1591-3 |
|---|---|---|

| Plaintiff | Defendant |
|---|---|
| Teresa Kobeck | Wells Fargo Bank N.A., individually, et al. |

TO:   (NAME AND ADDRESS OF DEFENDANT)

CT Corporation System
as registered agent for
Option One Mortgage Corporation
800 S. Gay Street
Knoxville, TN 37929

Method of Service:

☐ Certified Mail
☐ Shelby County Sheriff
☐ Comm. Of Insurance*
☐ Secretary of State*
☐ Out of County Sheriff*
☒ Private Process Server
☐ Other
   *Attach Required Fees

You are summoned to defend a civil action filed against you in the Chancery Court of Shelby County, Tennessee. Your answer to this action must be made within thirty (30) days from the date this summons is served upon you.  You must file your answer with the Clerk of the Court and send a copy to the plaintiff's attorney at the address listed below.  If you fail to defend this action within thirty (30) days of service, judgment by default can be rendered against you for the relief sought in the complaint.

| Attorney for plaintiff or plaintiff if filing Pro Se: (Name, address & telephone number) | ISSUED 31 of July , 20 09 |
|---|---|
| Gregory D. Cotton 6263 Poplar Ave., Ste. 1032 Memphis, TN 38119 (901) 683-1215 | **Dewun R. Settle, Clerk and Master** By: _____ **Deputy Clerk & Master** |

| TO THE SHERIFF: | Came to hand 5 day of Aug , 20 09 |
|---|---|
| | Sheriff We Bryant #031864 |

**Submit one original and one copy for each defendant to be served.

! Questions regarding this summons and the attached documents should be addressed to the Attorney listed above.

☙For ADA assistance only, call(901)379-7895

09/18/07

EXHIBIT
A
tabbies

## RETURN ON SERVICE OF SUMMONS _Wells Fargo Bank N.A_

I hereby return this summons as follows: (Name of Party Served) _____ _Ericka Fry_

☐ Served _____     ☐ Not Found _____
☐ Not Served _____     ☑ Other _____

DATE OF RETURN: This _19_ day of _Aug_ , 
20 _09_ .

By: _wes Tyson #31864_
Sheriff or other authorized person to serve process

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the _____ day of _____, 20___, I sent, postage prepaid, by registered return

receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case CH-_____ to

the defendant _____. On the _____ day of _____, 20___, I received the return

receipt, which had been signed by _____ on the _____ day of _____, 20___.

The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.

| | |
|---|---|
| Sworn to and subscribed before me on this _____ day of _____ _____, 20___.<br>Signature of _____ Notary Public or _____ Deputy Court Clerk<br><br>My Commission Expires: | Signature of plaintiff, plaintiff's attorney or other person authorized by statute to serve process. |

### NOTICE OF PERSONAL
### PROPERTY EXEMPTION

TO THE DEFENDANT(S):

Tennessee law provides a four thousand dollar ($4,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

Mail list to:  Clerk & Master
140 Adams Ave.
Room 308
Memphis, TN 38103

Please state file number on list.

ATTACH
RETURN
RECEIPT
HERE
(IF APPLICABLE)

## CERTIFICATION (IF APPLICABLE)

| | |
|---|---|
| I, Dewun R. Settle, Clerk & Master of the Chancery Court in the State of Tennessee, Shelby County, do certify this to be a true and correct copy of the original summons issued in this case. | Dewun R. Settle, Clerk & Master<br><br>By:_____<br>_____D.C. & M. |

09/18/07

| STATE OF TENNESSEE 30th JUDICIAL DISTRICT CHANCERY COURT AT MEMPHIS | SUMMONS | DOCKET NUMBER CH- 09 -159L 3 |
|---|---|---|

| Plaintiff | Defendant |
|---|---|
| Teresa Kobeck | Wells Fargo Bank N.A., individually, et al. |

**TO:    (NAME AND ADDRESS OF DEFENDANT)**

Corporation Service Company
as registered agent for
Wells Fargo Bank N.A.,  individually
2908 Poston Avenue
Nashville, TN 37203

Out Of County 8-8-09
Rec'd Date

**Method of Service:**

- [ ] Certified Mail
- [ ] Shelby County Sheriff
- [ ] Comm. Of Insurance*
- [ ] Secretary of State*
- [ ] Out of County Sheriff*
- [x] Private Process Server
- [ ] Other
      *Attach Required Fees

You are summoned to defend a civil action filed against you in the Chancery Court of Shelby County, Tennessee. Your answer to this action must be made within thirty (30) days from the date this summons is served upon you.  You must file your answer with the Clerk of the Court and send a copy to the plaintiff's attorney at the address listed below.  If you fail to defend this action within thirty (30) days of service, judgment by default can be rendered against you for the relief sought in the complaint.

| Attorney for plaintiff or plaintiff if filing Pro Se: (Name, address & telephone number) | ISSUED 31 of July , 20 09 |
|---|---|
| Gregory D. Cotton 6263 Poplar Ave., Ste. 1032 Memphis, TN 38119 (901) 683-1215 | **Dewun R. Settle, Clerk and Master** <br><br> By: _____ <br> Deputy Clerk & Master |

| TO THE SHERIFF: | Came to hand |
|---|---|
| | _____ day of _____, 20 _____ |
| | **Sheriff** |

**Submit one original and one copy for each defendant to be served.

! Questions regarding this summons and the attached documents should be addressed to the Attorney listed above.

For ADA assistance only, call(901)379-7895

## RETURN ON SERVICE OF SUMMONS

I hereby return this summons as follows:  (Name of Party Served) _____

☑ Served  *Wells Fargo Bank N.A.* _____    ☐ Not Found _____

☐ Not Served  *Individually, et. al.* _____    ☐ Other _____

Served Mary Marchetti

who accepted service for:

DATE OF RETURN: This _____ day of AUG 1 0 2009    By:  J R Davis DS

20 _____ .

Sheriff/or other authorized person to serve process

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the _____ day of _____, 20____, I sent, postage prepaid, by registered return

receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case CH-_____ to

the defendant _____.  On the _____ day of _____, 20____, I received the return

receipt, which had been signed by _____ on the _____ day of _____, 20____.

The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.

| | |
|---|---|
| Sworn to and subscribed before me on this _____ day of _____, 20____.<br><br>Signature of ____ Notary Public or ____ Deputy Court Clerk<br><br><br>My Commission Expires: | Signature of plaintiff, plaintiff's attorney or other person authorized by statute to serve process. |

### NOTICE OF PERSONAL
### PROPERTY EXEMPTION

TO THE DEFENDANT(S):

    Tennessee law provides a four thousand dollar ($4,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment.  If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court.  The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list.  Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books.  Should any of these items be seized you would have the right to recover them.  If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

    Mail list to:  Clerk & Master
                140 Adams Ave.
                Room 308
                Memphis, TN 38103

Please state file number on list.

ATTACH
RETURN
RECEIPT
HERE
(IF APPLICABLE)

## CERTIFICATION (IF APPLICABLE)

| | |
|---|---|
| I, Dewun R. Settle, Clerk & Master of the Chancery Court in the State of Tennessee, Shelby County, do certify this to be a true and correct copy of the original summons issued in this case. | Dewun R. Settle, Clerk & Master<br><br>By:_____<br><br>                       D.C. & M. |

09/18/07

SHELBY COUNTY
CHANCERY COURT
JUL 3 1 2009
DEWUN R. SETTLE, C & M
TIME: _____ BY: _____

IN THE CHANCERY COURT OF SHELBY COUNTY, TENNESSEE

TERESA KOBECK,

     Plaintiff,

v.                            No.: CH. 09-1591-3

WELLS FARGO BANK, N. A.,
Individually and as TRUSTEE
For OPTION ONE MORTGAGE,
OPITON ONE MORTGAGE
CORPORATION,

     Defendants.

---

## COMPLAINT FOR INJUNCTION OR IN THE ALTERNATIVE FOR ORDER RESTRUCTURING MORTGAGE

---

TO THE HONORABLE CHANCELLORS OF THE CHANCERY COURT OF SHELBY COUNTY, TENNESSEE:

COMES NOW the Plaintiff, Teresa Kobeck, by and through her attorney of record, and files this Complaint and would respectfully state and show unto the Court as follows:

1.     That Plaintiff, Teresa Kobeck (hereinafter referred to as "Kobeck") is a resident of Memphis, Shelby County, Tennessee residing at 1140 Wilbec Road, Memphis, Shelby County, Tennessee 38117.

2.     That the Defendant, Wells Fargo Bank N. A. (hereinafter referred to as "Wells Fargo") is as was at all times pertinent to the allegations contained in the complaint a California Corporation with its primary place of business being located at 464 California Street, San Francisco, California 94104 and can be served with a copy of

this complaint through its register agent Corporation Service Company at 2908 Poston Avenue, Nashville, Tennessee 37203.

    3.    That Defendant Option One Mortgage Corporation (hereinafter referred to as "Option One") is and was at all times pertinent hereto a California Corporation with its primary place of business located at 6531 Irvine Center Drive, Irvine, California 92618 and can be served by its registered agent C T Corporation System at 800 S. Gay Street, Knoxville, Tennessee 37929.

    4.    That on or about September 13, 2005 Plaintiff purchased the real property located at 1140 Wilbec Road, Memphis, Shelby County, Tennessee 38117 for a contract sales price of One Hundred Twenty Five Thousand Dollars ($125,000.00).

    5.    That on or about September 13, 2005, Plaintiff executed a Deed of Trust to Priority Trustee Services of Tennessee, L.L.C., said Deed of Trust being in the amount of One Hundred Thousand Dollars ($100,000.00) (a copy of the paperwork that Plaintiff has evidencing the sale of the Wilbec property to Plaintiff is to this Complaint and made a part hereof as follows: Settlement Statement-Exhibit "A"; and Adjustable Rate Note and accompanying Deed of Trust-Exhibit "B").

    6.    That due to the illness of Plaintiff's father, Plaintiff got behind on the mortgage.

    7.    That Plaintiff while working with the Defendants and in response to the request of the Defendants in July, 2007 wired Three Thousand Dollars ($3,000.00) to the Defendants.

    8.    That the Defendants informed Plaintiff that if she would wire Three Thousand Dollars ($3,000.00) to the Defendants in July, 2007, that the Defendants

would set up a new payment plan to allow the Plaintiff to not only stay in the Wilbec home but continue to pay her mortgage.

9.   That in September, 2007, Plaintiff continued to try to stay in touch with the Defendants to no avail.

10.   That in or about September, 2007, Plaintiff received a letter from attorneys Shapiro and Kirsch, here in Memphis, saying that they were the agent Substitute Trustee and that the Wilbec property was to be foreclosed on.

11.   That Plaintiff continued to attempt to work with the Defendants through a Bombay, India call center and each time was told that the Defendants could not do anything until the paperwork was returned to them by Shapiro and Kirsch.

12.   That Shapiro and Kirsch conducted a foreclosure sale on November 26, 2007 (a copy of the Substitute Trustee's Deed is attached hereto and made a part hereof as Exhibit "C").

13.   That the Defendants instituted a Forcible Entry Detainer action in the General Sessions Court of Shelby, County, Tennessee under Docket No. 1255496 on December 7, 2007 and further that the Defendants dropped that matter from the Court Calendar while Plaintiff attempted to work out a mortgage arrangement with the Defendants.

14.   That Defendants filed another Forcible Entry Detainer action in the General Sessions Court of Shelby County, Tennessee case no. 1343881on February 24, 2009 after refusing to communicate with Plaintiff or counsel of Shapiro and Kirsch, Defendants' attorneys.

15.    That Plaintiff has relied to her detriment on the representations of the Defendants while trying to negotiate in good faith.

16.    That Plaintiff has had the funds with which to satisfy any mortgage arrearage but has been unable to do so because of the failure of the Defendants to enter into any negotiation in good faith or otherwise.

17.    That the defendants are guilty of bad faith, and Plaintiff has been damaged by the Defendants' bad faith and her reliance, to her detriment, on the promises made by the Defendants.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that:

1.    Service be had upon Defendants and that they be required to answer thereto within the time provided by law,

2.    That this Court enjoin the Defendants from evicting Plaintiff from 1140 Wilbec Road, Memphis, Shelby County, Tennessee 38117,

3.    That the Defendants restructure Plaintiff's mortgage with the Defendants,

4.    That this Court award damages for willful misrepresentation of the Defendants upon which Plaintiff has relied to her detriment, said damages to be proven at trial but in no less than the amount of Fifty Thousand Dollars ($50,000.00),

5.    That this Court award Plaintiff her attorney's fees, prejudgment interest and cost; and

6.    For such other and further general relief to which Plaintiff may be entitled.


Respectfully submitted,


Gregory D. Cotton  BPR # 013679
Attorney for Plaintiff
6263 Poplar Ave., Ste. 1032
Memphis, TN 38119
(901) 683-1215


Teresa Kobeck

## AFFIDAVIT

STATE OF TENNESSEE

COUNTY OF SHELBY

Personally appeared before me, the undersigned authority, in and for the County and State aforesaid, the within named, Teresa Kobeck, who after being duly sworn, stated that the matters, facts and things set forth in the above and foregoing Complaint were true and correct to the best of the Complainant's knowledge and belief.

_Teresa Kobeck_
Teresa Kobeck

SWORN TO AND SUBSCRIBED BEFORE ME, this the _30_ day of

_July_ , 2009.

NOTARY PUBLIC

My Commission Expires:

MY COMMISSION EXPIRES JULY 27, 2010

## A. Settlement Statement

U.S. Department of Housing
and Urban Development

OMB No. 2502-0265

| B. Type of Loan | | |
|---|---|---|
| 1.☐ FHA    2.☐ FmHA    3.☒ Conv. Unins. | 6. File Number<br>M-11297 | 7. Loan Number<br>391015183 | 8. Mortgage Insurance Case Number |
| 4.☐ VA    5.☐ Conv. Ins. | | | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| Teresa L. Kobeck<br>1140 Wilbec Road<br>Memphis, Tennessee 38117 | Guy Q. James<br>1140 Wilbec Road<br>Memphis, Tennessee 38117 | Option One Mortgage Corporation<br>1600 Parkwood Circle Ste 615<br>Atlanta, GA  30339 |

| G. Property Location | H. Settlement Agent |  |
|---|---|---|
| 1140 Wilbec Road<br>Memphis, Tennessee 38117 | American Title Company, Inc. | |
| | Place of Settlement<br>5705 Stage Road<br>Suite 180<br>Bartlett, Tennessee 38134 | I. Settlement Date<br>09/13/05 |

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| 100. GROSS AMOUNT DUE FROM BORROWER | | 400. GROSS AMOUNT DUE TO SELLER | |
| 101. Contract sales price | 125,000.00 | 401. Contract sales price | 125,000.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 6,660.22 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes    09/13 to 12/31 | 227.61 | 406. City/town taxes    09/13 to 12/31 | 227.61 |
| 107. County taxes    09/13 to 12/31 | 267.84 | 407. County taxes    09/13 to 12/31 | 267.84 |
| 108. Assessments    to | | 408. Assessments    to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. GROSS AMOUNT DUE FROM BORROWER | 132,155.67 | 420. GROSS AMOUNT DUE TO SELLER | 125,495.45 |
| 200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER | | 500. REDUCTIONS IN AMOUNT TO SELLER | |
| 201. Deposit or earnest money | | 501. Excess Deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 100,000.00 | 502. Settlement charges to seller (line 1400) | 1,413.88 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | 66,154.65 |
| | | WILSON AND ASSOCIATES | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. SELLER PAID CLOSING COSTS | 6,660.22 | 506. SELLER PAID CLOSING COSTS | 6,660.22 |
| 207. SELLER HELD 2ND MORTGAGE | 25,000.00 | 507. SELLER HELD 2ND MORTGAGE | 25,000.00 |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes    to | | 510. City/town taxes    to | |
| 211. County taxes    to | | 511. County taxes    to | |
| 212. Assessments    to | | 512. Assessments    to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. TOTAL PAID BY / FOR BORROWER | 131,660.22 | 520. TOTAL REDUCTION AMOUNT DUE SELLER | 99,228.75 |
| 300. CASH AT SETTLEMENT FROM OR TO BORROWER | | 600. CASH AT SETTLEMENT TO OR FROM SELLER | |
| 301. Gross amount due from borrower (line 120) | 132,155.67 | 601. Gross amount due to seller (line 420) | 125,495.45 |
| 302. Less amounts paid by/for borrower (line 220) | 131,660.22 | 602. Less reduction amount due to seller (line 520) | 99,228.75 |
| 303. CASH    FROM    BORROWER | 495.45 | 603. CASH    TO    SELLER | 26,266.70 |



U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT                  SETTLEMENT STATEMENT

## L. SETTLEMENT CHARGES

File Number: M-11297

| | | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|
| 700. | TOTAL SALES/BROKER'S           COMMISSION based on price $          @          = | | | |
| | Division of commission (line 700) as follows: | | | |
| 701. | $          to | | | |
| 702. | $          to | | | |
| 703. | Commission paid at Settlement | | | |
| 704. | | | | |
| 800. | ITEMS PAYABLE IN CONNECTION WITH LOAN | P.O.C. | | |
| 801. | Loan Origination Fee          % | | | |
| 802. | Loan Discount          % | | | |
| 803. | Appraisal Fee          to   Martha Crawford Appraisal Company | | | |
| 804. | Credit Report          to | | 300.00 | |
| 805. | Lender's Inspection Fee          to | | | |
| 806. | Mtg. Ins. Application Fee          to | | | |
| 807. | Assumption Fee          to | | | |
| 808. | COMMITMENT FEE          Option One Mortgage Corporation | | 595.00 | |
| 809. | BROKER FEE          PREMIER MORTGAGE FUNDING | | 2,995.00 | |
| 810. | TAX SERVICE FEE          FIDELITY NATIONAL TAX SERVICE | | 65.00 | |
| 811. | FUNDING FEE          Option One Mortgage Corporation | | 11.00 | |
| 812. | FLOOD SEARCH FEE          FIRST AMERICAN  FLOOD DATA SERVICES | | 12.00 | |
| 813. | BROKER COMP. FEE(YSP): OOMC to    PREMIER MORTGAGE FUNDING | 1000L | | |
| 814. | | | | |
| 815. | | | | |
| 900. | ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | |
| 901. | Interest from    09/13/05   to   10/01/05   @$          26.39   /day          18 day(s) | | 475.02 | |
| 902. | Mortgage Insurance Premium          to | | | |
| 903. | Hazard Insurance Premium          1 yrs. to   ALLSTATE INSURANCE | | 606.00 | |
| 904. | 2005 COUNTY TAXES          SHELBY COUNTY TRUSTEE | | | 896.88 |
| 905. | | | | |
| 1000. | RESERVES DEPOSITED WITH LENDER FOR | | | |
| 1001. | Hazard Insurance          mo. @$          / mo. | | | |
| 1002. | Mortgage Insurance          mo. @$          / mo. | | | |
| 1003. | City property taxes          mo. @$          / mo. | | | |
| 1004. | County property taxes          mo. @$          / mo. | | | |
| 1005. | Annual Assessments          mo. @$          / mo. | | | |
| 1006. | mo. @$          / mo. | | | |
| 1007. | mo. @$          / mo. | | | |
| 1008. | Aggregate Reserve for Hazard/Flood Ins, City/County Prop Taxes, Mortgage Ins & Annual Assessments | | | |
| 1100. | TITLE CHARGES | | | |
| 1101. | Settlement or closing fee          to   American Title Company, Inc. | | 210.00 | 210.00 |
| 1102. | Abstract or title search          to   American Title Company, Inc. | | | 200.00 |
| 1103. | Title examination          to | | | |
| 1104. | Title insurance binder          to | | | |
| 1105. | Document preparation          to | | | |
| 1106. | Notary fees          to | | | |
| 1107. | Attorney's fees          to   American Title Company, Inc. | | 55.00 | 55.00 |
| | (includes above item No:                                    ) | | | |
| 1108. | Title insurance          to   American Title Company, Inc. | | 500.00 | |
| | (includes above item No:                                    ) | | | |
| 1109. | Lender's coverage     100,000.00 = 500.00 | | | |
| 1110. | Owner's coverage | | | |
| 1111. | Courier Fee          American Title Company, Inc. | | 40.00 | 40.00 |
| 1112. | | | | |
| 1113. | | | | |
| 1200. | GOVERNMENT RECORDING AND TRANSFER CHARGES | | | |
| 1201. | Recording fees          Deed $          ; Mortgage $   138.00 ; Releases $          12.00 | | 138.00 | 12.00 |
| 1202. | City/county/stamps          Deed $          ; Mortgage $ | | | |
| 1203. | State tax/stamps          Deed $   462.50   ; Mortgage $          115.00 | | 577.50 | |
| 1204. | 2ND MORTGAGE RECORDING | | 60.00 | |
| 1205. | 2ND MORTGAGE INTANGIBLE TAX | | 20.70 | |
| 1300. | ADDITIONAL SETTLEMENT CHARGES | | | |
| 1301. | Survey          to | | | |
| 1302. | Pest inspection          to | | | |
| 1303. | | | | |
| 1304. | | | | |
| 1305. | | | | |
| 1306. | | | | |
| 1307. | | | | |
| 1308. | | | | |
| 1400. | TOTAL SETTLEMENT CHARGES     (enter on lines 103 and 502, Sections J and K) | | 6,660.22 | 1,413.88 |

## HUD-1 CERTIFICATION

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

I, if the Purchaser/Borrower, acknowledge receipt in full of the loan proceeds, and if the Seller, acknowledge payment in full of the proceeds due me.

If this transaction involves a sale, I agree to adjust the tax prorations shown on the Settlement Statement when the actual ad valorem tax bill is rendered.

If this transaction involves a sale, as part of the consideration therefore, I agree that the contract between the parties is by reference incorporated herein and made a part hereof, and that the terms and conditions thereof shall survive the closing and shall not merge upon delivery of the deed.

I swear or affirm that I am of legal age and of sound mind, and that if I am the Seller, am a citizen of the United States of America, or if a corporation or other entity, am duly formed under the laws of the United States of America or one of the States thereof, and affirm my non-foreign status.

| | |
|---|---|
| Borrower  Teresa L. Kobeck | Seller  Guy Q. James |
| Borrower | Seller |
| Borrower | Seller |
| Borrower | Seller |

To the best of my knowledge the HUD-1 Settlement statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

American Title Company, Inc.

Settlement Agent

Date: September 13, 2005

**WARNING:** It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For detail see: Title 18: U.S. Code, Sections 1001 and Section 1010.

Loan Number:   3910153 3                    Servicing Number:   001880870-9              Date:   09/13/05

# ADJUSTABLE RATE NOTE
## (LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

1140  WILBEC RD,  MEMPHIS, TN 38117-5836

[Property Address]

**1.    BORROWER'S PROMISE TO PAY**
        In return for a loan that I have received, I promise to pay U.S.      $100,000.00           (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is

        Option One Mortgage Corporation, a California Corporation

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.    INTEREST**
        Interest will be charged on unpaid principal until the full amount of principal has been paid. Interest will be calculated on the basis of a 12-month year and a 30-day month. I will pay interest at a yearly rate of       9.500%       . The interest rate I will pay may change in accordance with Section 4 of this Note.
        The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.    PAYMENTS**
        **(A) Time and Place of Payments**
        I will pay principal and interest by making payments every month.
        I will make my monthly payments on the first day of each month beginning on   November 01      ,   2005    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on,   October 01      ,   2035      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
        I will make my monthly payments at    Option One Mortgage Corporation
                                P.O. BOX 92103 LOS ANGELES, CA 90009-2103
or at a different place if required by the Note Holder.
        **(B) Amount of My Initial Monthly Payments**
        Each of my initial monthly payments will be in the amount of U.S.     $840.85       . This amount may change.
        **(C) Monthly Payment Changes**
        Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.
        **(D) Application of Payments**
        Payments received by the Note Holder will be applied in the following order: (i) prepayment charges due under this Note; (ii) amounts payable under paragraph 2 of the Security Instrument (defined below); (iii) interest due under this Note; (iv) principal due under this Note; and (v) late charges due under this Note.

**4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**
        **(A) Change Dates**
        The interest rate I will pay may change on the first day of    October 01        ,     2007     , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."
        **(B) The Index**
        Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
        If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
        **(C) Calculation of Changes**
        Before each Change Date, the Note Holder will calculate my new interest rate by adding
SEVEN AND 85/100                            percentage point(s) ( 7.850%        )
to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
        The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

B

Loan Number:   3910151                 Servicing Number:   001880870-9                    09/13/05

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than    12.500%    or less than   9.500% . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than    15.500%    or less than    9.500%

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due, together with accrued interest. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

If within    24 Months    from the date of execution of the Security Instrument I make a full prepayment or, in certain cases a partial prepayment, I will at the same time pay to the Note Holder a prepayment charge. The prepayment charge will be equal to six (6) months advance interest on the amount of any prepayment that, when added to all other amounts prepaid during the twelve (12) month period immediately preceding the date of the prepayment, exceeds twenty percent (20%) of the original principal amount of this Note. In no event will such a charge be made unless it is authorized by state or federal law.

**6.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    6.000%    of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all interest that I owe on that amount, together with any other charges that I owe under this Note or the Security Instrument, except as otherwise required by applicable law.

**(C) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(D) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law, whether or not a lawsuit is filed. Those expenses include, for example, reasonable attorneys' fees.

**8.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

USNT6022.wp (02-01-02)

Loan Number:   3910151    Servicing Number:   001880870-9         09/13/05

10.    WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11.    SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)          _____(Seal)
TERESA L KOBECK                 -Borrower                                       -Borrower

_____(Seal)          _____(Seal)
                                -Borrower                                       -Borrower

_____(Seal)          _____(Seal)
                                -Borrower                                       -Borrower

[Sign Original Only]

USNT0023.wp (02-01-02)

PREPARED BY AND
WHEN RECORDED MAIL TO:
OPTION ONE MORTGAGE CORPORATION
P.O. BOX 57096
IRVINE, CA 92619-7096

ATTN:   RECORDS MANAGEMENT

Loan Number:   391015183
Servicing Number:   001880870-9

_____[Space Above This Line For Recording Data]_____

Maximum principal indebtedness in Tennessee for recording tax purposes is $   100,000.00

# DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on      September 13, 2005      . The grantor is
TERESA L KOBECK A SINGLE WOMAN

("Borrower"). The trustee is
PRIORITY TRUSTEE SERVICES OF TENNESSEE, L.L.C..
of BARTLETT, TENNESSEE
("Trustee"). The beneficiary is
Option One Mortgage Corporation, a California Corporation
which is organized and existing under the laws of                    CALIFORNIA                    , and whose
address is
3 Ada, Irvine, CA  92618
("Lender"). Borrower owes Lender the principal sum of
ONE HUNDRED THOUSAND
. . . AND NO/100THs  Dollars (U.S.    $100,000.00     ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on   October 01, 2035   .This Security
Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions
and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the
security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security
Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale,
the following described property located in                  Shelby                  County, Tennessee:
067010 00012

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF.

which has the address of  1140  WILBEC RD, MEMPHIS,

[Street, City]

Tennessee       38117-5836            ("Property Address");
[Zip Code]
being the same property conveyed to Grantor by deed of record in book           , page          ,Register's office
for said County.

TOGETHER  WITH  all  the  improvements  now  or  hereafter  erected  on  the  property,  and  all  easements,
appurtenances,  and  fixtures  now  or  hereafter  a  part  of  the  property.  All  replacements  and  additions  shall  also  be  covered  by
this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and
convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will

TENNESSEE - Single Family
Page 1 of 7

TND10011.wp (02-24-05)

Loan Number:   391015183          Servicing Number:   001880870-9          Date:   09/13/05

defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2; or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, or applicable Law otherwise requires, insurance proceeds shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining any such insurance proceeds, and then, at Lender's option, in such order and proportion as Lender may determine in its sole and absolute discretion, and regardless of any impairment of security or lack thereof: (i) to the sums secured by this Security Instrument, whether or not then due, and to such components thereof as Lender may determine in its sole and absolute discretion; and/or (ii) to Borrower to pay the costs and expenses of necessary repairs or restoration of the Property to a condition satisfactory

TND10012.wp (02-24-05)

to Lender. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, Lender may collect the insurance proceeds. Lender may, in its sole and absolute discretion, and regardless of any impairment of security or lack thereof, use the proceeds to repair or restore the Property or to pay the sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

If Borrower obtains earthquake insurance, any other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by Lender, then such insurance shall (i) name Lender as loss payee thereunder, and (ii) be subject to the provisions of this paragraph 5.

6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower acknowledges that the Lender does not desire to make a loan to Borrower secured by this property on the terms contained in the Note unless the property is to be occupied by Borrower as Borrower's primary/secondary residence. Lender makes non-owner residence loans of different terms. Borrower promises and assures Lender that Borrower intends to occupy this property as Borrower's primary/secondary residence and that Borrower will so occupy this property as its sole primary/secondary residence within sixty (60) days after the date of the Security Instrument. If Borrower breaches this promise to occupy the property as Borrower's primary/secondary residence, then Lender may invoke any of the following remedies, in addition to the remedies provided in the Security Instrument; (1) Declare all sums secured by the Security Instrument due and payable and foreclose the Security Instrument, (2) Decrease the term of the loan and adjust the monthly payments under the Note accordingly, increase the interest rate and adjust the monthly payments under the Note accordingly, or (3) require that the principal balance be reduced to a percentage of either the original purchase price or the appraised value then being offered on non-owner occupied loans.

Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

Borrower shall, at Borrower's own expense, appear in and defend any action or proceeding purporting to affect the Property or any portion thereof or Borrower's title thereto, the validity or priority of the lien created by this Security Instrument, or the rights or powers of Lender or Trustee with respect to this Security Instrument or the Property. All causes of action of Borrower, whether accrued before or after the date of this Security Instrument, for damage or injury to the Property or any part thereof, or in connection with any transaction financed in whole or in part by the proceeds of the Note or any other note secured by this Security Instrument, by Lender, or in connection with or affecting the Property or any part thereof, including causes of action arising in tort or contract and causes of action for fraud or concealment of a material fact, are, at Lender's option, assigned to Lender; and the proceeds thereof shall be paid directly to Lender who, after deducting therefrom all its expenses, including reasonable attorneys' fees, may apply such proceeds to the sums secured by this Security Instrument or to any deficiency under this Security Instrument or may release any monies so received by it or any part thereof, as Lender may elect. Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement thereof. Borrower agrees to execute such further assignments and any other instruments as from time to time may be necessary to effectuate the foregoing provisions and as Lender shall request.

7. Protection of Lender's Rights in the Property. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate in effect from time to time and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. Mortgage Insurance. If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage

Loan Number:   391015183          Servicing Number:   001880870-9          Date:   09/13/05

insurer approved by Lender.     If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

     9. Inspection. Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

     10. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Lender may apply, use or release the condemnation proceeds in the same manner as provided in paragraph 5 hereof with respect to insurance proceeds.

     If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

     Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

     11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

     12. Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

     13. Loan Charges. If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

     14. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

     15. Governing Law; Severability. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

     16. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

     17. Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

     If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

TND10014.wp (02-24-05)

Loan Number:   391015183          Servicing Number:   001880870-9          Date:   09/13/05

18. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Lean Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law. The holder of the Note and this Security Instrument shall be deemed to be the Lender hereunder.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

Borrower shall be solely responsible for, shall indemnify, defend and hold harmless Lender, its directors, officers, employees, attorneys, agents, and their respective successors and assigns, from and against any and all claims, demands, causes of action, loss, damage, cost (including actual attorneys' fees and court costs and costs of any required or necessary repair, cleanup or detoxification of the Property and the preparation and implementation of any closure, abatement, containment, remedial or other required plan), expenses and liability directly or indirectly arising out of or attributable to (a) the use, generation, storage, release, threatened release, discharge, disposal, abatement or presence of Hazardous Substances on, under or about the Property, (b) the transport to or from the Property of any Hazardous Substances, (c) the violation of any Hazardous Substances law, and (d) any Hazardous Substances claims.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

ADDITIONAL COVENANTS. Borrower and Lender further covenant and agree as follows:

21. **Acceleration; Remedies.** If any installment under the Note or notes secured hereby is not paid when due, or if Borrower should be in default under any provision of this Security Instrument, or if Borrower is in default under any other deed of trust or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest thereon shall at once become due and payable at the option of Lender without prior notice, except as otherwise required by applicable law, and regardless of any prior forbearance. In such event, Lender, at its option, and subject to applicable law, may then or thereafter invoke the power of sale and/or any other remedies or take any other actions permitted by applicable law. Lender will collect all expenses incurred in pursuing the remedies described in this Paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Trustee shall give notice of sale by public advertisement in the county in which the Property is located for the time and in the manner provided by applicable law, and Lender or Trustee shall mail a copy of the notice of sale to Borrower in the manner provided in paragraph 14. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and under the terms designated in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. If the Property is sold pursuant to this paragraph 21, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale.

TND10015.wp (02-24-05)

Loan Number:   391015183          Servicing Number:   001880870-9          Date:   09/13/05

If the Property is sold pursuant to this paragraph 21, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant at will of the purchaser and hereby agrees to pay the purchaser the reasonable rental value of the Property after sale.

22. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for releasing the Property for services rendered if the charging of the fee is permitted under applicable law.

23. Substitute Trustee. Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

24. Waivers. Borrower expressly waives all right of homestead, equity of redemption, statutory right of redemption and relinquishes all other rights and exemptions of every kind, including, but not limited to, a statutory right to an elective share in the Property.

25. Misrepresentation and Nondisclosure. Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which this Security Instrument secures, and in the event that Borrower has made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice or demand, shall have the right to declare the indebtedness secured by this Security Instrument, irrespective of the maturity date specified in the Note or notes secured by this Security Instrument, immediately due and payable. To the extent permitted by applicable law, Trustee, upon presentation to it of an affidavit signed by Lender setting forth facts showing a default by Borrower under this paragraph, is authorized to accept as true and conclusive all facts and statements therein, and to act thereon hereunder.

26. Time is of the Essence. Time is of the essence in the performance of each provision of this Security Instrument.

27. Waiver of Statute of Limitations. The pleading of the statute of limitations as a defense to enforcement of this Security Instrument, or any and all obligations referred to herein or secured hereby, is hereby waived to the fullest extent permitted by applicable law or lawful successors in interest.

28. Modification. This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender or lawful successors in interest.

29. Reimbursement. To the extent permitted by applicable law, Borrower shall reimburse Trustee and Lender for any and all costs, fees and expenses which either may incur, expend or sustain in the execution of the trust created hereunder or in the performance of any act required or permitted hereunder or by law or in equity or otherwise arising out of or in connection with this Security Instrument, the Note, any other note secured by this Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument. To the extent permitted by applicable law, Borrower shall pay to Trustee and Lender their fees in connection with Trustee and Lender including, but not limited to assumption application fees; fees for payoff demands and, statements of loan balance; fees for making, transmitting and transporting copies of loan documents, verifications, full or partial lien releases and other documents requested by borrower or necessary for performance of Lender's rights or duties under this Security Instrument; fees arising from a returned or dishonored check; fees to determine whether the Property is occupied, protected, maintained or insured or related purposes; appraisal fees, inspection fees, legal fees, broker fees, insurance mid-term substitutions, repair expenses, foreclosure fees and costs arising from foreclosure of the Property and protection of the security for this Security Instrument; and all other fees and costs of a similar nature not otherwise prohibited by law.

30. Clerical Error. In the event Lender at any time discovers that the Note, any other note secured by this Security Instrument, the Security Instrument, or any other document or instrument executed in connection with the Security Instrument, Note or notes contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from Lender, to re-execute any documents that are necessary to correct any such error(s). Borrower further agrees that Lender will not be liable to Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error.

31. Lost Stolen, Destroyed or Mutilated Security Instrument and Other Documents. In the event of the loss, theft or destruction of the Note, any other note secured by this Security Instrument, the Security Instrument or any other documents or instruments executed in connection with the Security Instrument, Note or notes (collectively, the "Loan Documents"), upon Borrower's receipt of an indemnification executed in favor of Borrower by Lender; or, in the event of the mutilation of any of the Loan Documents, upon Lender's surrender to Borrower of the mutilated Loan Document, Borrower shall execute and deliver to Lender a Loan Document in form and content identical to, and to serve as a replacement of, the lost, stolen, destroyed, or mutilated Loan document, and such replacement shall have the same force and effect as the lost, stolen, destroyed, or mutilated Loan Documents, and may be treated for all purposes as the original copy of such Loan Document.

32. Assignment of Rents. As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property. Borrower shall have the right to collect and retain the rents of the Property as they become due and payable provided Lender has not exercised its rights to require immediate payment in full of the sums secured by this Security instrument and Borrower has not abandoned the Property.

33. Maximum principal indebtedness for Tennessee recording tax purposes is
    ONE HUNDRED THOUSAND                                    AND NO/100TH   Dollars.

34. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and

Loan Number:  39101    3    ) )          Servicing Number:  001880870-9          Date:   09/13/05

supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

[X] Adjustable Rate Rider          [ ] Condominium Rider          [ ] 1-4 Family Rider
[ ] No Prepayment Penalty Option Rider          [ ] Planned Unit Development Rider          [ ] Occupancy Rider
[ ] Other(s) (specify)

       BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security
Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_____          _____(Seal)
                                                                                                    -Borrower

_____          _____(Seal)
                                                                                                    -Borrower

_____(Seal)          _____(Seal)
TERESA  L  KOBECK          -Borrower                                            -Borrower

_____(Seal)          _____(Seal)
                                              -Borrower                                            -Borrower

STATE OF TENNESSEE,                              County ss:

       On this            day of                                  ,              , before me personally appeared

to me known to be the person(s) described in and who executed the foregoing instrument, and who acknowledged the
execution of the same to be                          free act and deed. Witness my hand and official seal.

My Commission Expires:

                                             _____
                                             Notary Public

Loan Number: 391015183    Servicing Number: 001880870-9    Date: 09/13/05

# ADJUSTABLE RATE RIDER
## (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made September 13, 2005 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to

Option One Mortgage Corporation, a California Corporation

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

1140  WILBEC RD,  MEMPHIS, TN 38117-5836

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

The Note provides for an initial interest rate of 9.500%. The Note provides for changes in the interest rate and the monthly payments, as follows:

4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay may change on the first day of October 01 2007, and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding SEVEN AND 85/100 percentage point(s) ( 7.850% ) to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX - Single Family
Page 1 of 3

USRI0021 (02-23-99)

Loan Number:   391015183   ·   Servicing Number:   001880870-9   ·   Date:   09/13/05

be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than   12.500%   or less than   9.500%   . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than   15.500%   or less than   9.500%

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Covenant 17 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Loan Number: 391015183     Servicing Number: 001880870-9     Date: 09/13/05

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____(Seal)          _____(Seal)
TERESA L KOBECK

_____(Seal)          _____(Seal)

_____(Seal)          _____(Seal)

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX-Single Family
Page 3 of 3                                                      USRI0023 (02-23-99)

# FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT
## (REAL ESTATE)

Provisions proceeded by a box (☐), are applicable only if the box is marked.

☐ PRELIMINARY   ☒ FINAL

LENDER (Creditor): Option One Mortgage Corporation
1600 Parkwood Circle SE, Suite 615
Atlanta, GA  30339

Borrower(s) Name(s):  TERESA L KOBECK

Loan Type: CONVENTIONAL
Loan Program: 631

Address: 1140 WILBEC RD
MEMPHIS, TN  38117-5836
Property Address: 1140  WILBEC RD
MEMPHIS, TN  38117-5836

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. |
| 11.836     % | $265,282.37 | $95,541.98 | $360,824.35 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE |
|---|---|---|
| 24 payments of $840.85 monthly, beginning Nov 01, 2005 | | |
| 335 payments of $1,013.85 monthly, beginning Nov 01, 2007 | | |
| 1 payment of $1,004.20 on Oct 01, 2035 | | |

VARIABLE RATE:

☒  This transaction is subject to a Variable-Rate Feature.  Disclosures about Variable-Rate Feature have been provided to you earlier.

The current index used for this calculation is  3.990%  .

SECURITY:
You are giving a security interest in the Property located at: 1140  WILBEC RD
MEMPHIS, TN  38117-5836

LATE CHARGE:
If you are more than   FIFTEEN   days late in making any payment, you will pay a late charge of
☐ the lesser of   ☐ the greater of   ☒ an amount equal to   ☐ $_____   ☐ 6.000 %
of the overdue payment of principal and interest.

INSURANCE:
You may obtain property insurance from anyone you want that is acceptable to Lender.

FILING/RECORDING FEE:
☒ $  156.00

PREPAYMENT:
If you pay off early, you
☒ may   ☐ will not   have to pay a fee.
☐ may   ☒ will not   be entitled to a refund of part of the finance charge.

ASSUMPTION:
Someone buying your home,
☐ cannot assume the remainder of the mortgage on the original terms.
☒ may, subject to conditions, be allowed to assume the remainder of the mortgage on the original terms.

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, prepayment refunds and penalties, and creditor's policy regarding assumption of the obligation.
"e" means estimate

☐ Please refer to the "Good Faith Estimate" for an Itemization of Amount Financed.     ☒ Please refer to the Itemization of Amount Financed Statement.

I/We have received and read a copy of this disclosure and the documents referred to in this disclosure.

| | | |
|---|---|---|
| Borrower   TERESA L KOBECK | Date | Borrower _____ Date |
| Borrower _____ | Date | Borrower _____ Date |
| Borrower _____ | Date | Borrower _____ Date |

Page 1 of 1

USD0301.wp (12-16-04)

| APPLICANT(S) KOBECK | | | AMOUNT | SAL | 125,000.00 |

PROPERTY ADDRESS 1140 WILBEC RD,  
MEMPHIS, TN 38117-5836

☐ FHA    ☐ VA    ☒ CONVENTIONAL

| LOAN NUMBER 391015183 | LOAN AMOUNT $100,000.00 | INTEREST RATE 9.500% |

Listed below is the ITEMIZATION OF AMOUNT FINANCED.
These figures are only estimates and the actual charges due at settlement may be different.

### ESTIMATED SETTLEMENT CHARGES

#### DESCRIPTION OF CHARGES

ITEMIZATION OF PREPAID FINANCE CHARGE:

| | |
|---|---|
| Loan Origination Fee | |
| Loan Discount Points | |
| Tax Service | $65.00 |
| Processing | |
| Funding Fee | $11.00 |
| Broker Fee | $2,995.00 |
| Underwriting Fee | |
| Application Fee | |
| Prepaid Interest For 18 days @$26.39 per diem | $475.02 |
| Settlement/Closing/Attorney Fee To AMERICAN TITLE COMPANY | $265.00 |
| Courier/Messenger Fee | $40.00 |
| Demand/Beneficiary Fee | |
| Miscellaneous Fee          Commitment Fee | $595.00 |
| Miscellaneous Fee | |
| Flood Determination | $12.00 |
| TOTAL PREPAID FINANCE CHARGE | $4,458.02 |
| AMOUNT FINANCED | $95,541.98 |

AMOUNTS PAID TO OTHERS ON YOUR BEHALF

| | |
|---|---|
| Appraisal Fee | |
| Credit Report Fee | |
| Hazard Insurance | $606.00 |
| Flood Insurance | $0.00 |
| Hazard Insurance Reserves | |
| City Property Tax Reserves | |
| County Property Tax Reserves | |
| Flood Insurance Reserves | |
| Aggregate Adjustment | |
| Document Preparation Fee To | |
| Notary Fees | |
| Title Insurance(Inc.Survey,Exam.,Commitment or Endorsements,if applicable) | $1,070.00 |
| Recording Fees | $156.00 |
| Flood Certification | |
| Miscellaneous Fee | |
| Miscellaneous Fee | |
| TOTAL AMOUNTS PAID TO OTHERS ON YOUR BEHALF | $1,832.00 |

This disclosure does not cover all items you will be required to pay in cash at settlement. You may wish to inquire as to the nature of these items and their amounts.

I (We) hereby acknowledge receiving and reading a completed copy of this disclosure.

| Applicant TERESA L KOBECK | Date | Applicant | Date |
| Applicant | Date | Applicant | Date |
| Applicant | Date | Applicant | Date |

USMS0991.wp (08-25-05)

Loan Number: 39? 518?                Servicing Number: 001880870-9        Date: ?13/05

# SUMMARY OF THE
# TERMS OF YOUR LOAN

This loan has an ADJUSTABLE Interest Rate.  Your monthly payment will change
periodically.

THIS LOAN HAS A PREPAYMENT CHARGE.

The following information is a description of the key terms of your loan.  This form is intended to
provide you with "at-a-glance" information in a clear, easy-to-read format, and is not designed to replace
any Federally required disclosures.  For complete details on this transaction, including your interest rate,
margin, index and change dates (if an adjustable rate mortgage); as well as your prepayment charge, if
any, please review your Note, Deed of Trust/Mortgage/Security Deed, Truth-in-Lending, Itemization of
Amount Financed; and HUD-1 Settlement Statement.

Should you have questions regarding any of the terms of this loan, please contact your mortgage broker,
PREMIER MORTGAGE FUNDING INC                                (901) 872-8553

- This loan has a        ADJUSTABLE              interest rate of      9.500      %,
  with an Annual Percentage Rate of    11.836      %.

- The principal loan amount is $ 100,000.00

- The loan term is    360            months.

- The monthly payments due, beginning  November 01, 2005   , are:

  | | | |
  |---|---|---|
  | Principal and Interest | $ | 840.85 |
  | Taxes | $ | PAID BY BORROWER |
  | Insurance | $ | PAID BY BORROWER |
  | | | |
  | Total | $ | 840.85 |

- The total broker fees are $    2,995.00   , and the total lender fees are $ 88.00     .
  *If your loan is a refinance, these fees may be financed and if so, would be included in the principal
  balance of your loan.  You will also likely incur charges by third parties, such as title insurer and
  closing agent.  Please see your HUD-1 Settlement Statement for a complete itemization of these fees.*

This loan has a prepayment charge for              24          months.
If you pay off your loan within that time period, you are required to pay a
prepayment charge.  In return for accepting a prepayment charge on your loan,
you have the benefit of a lower APR, compared to a loan without a prepayment
charge.  Please read your Note for a description of this charge.

By signing below, Borrower(s) hereby acknowledges reading and understanding the information disclosed
above, and having received a copy of this disclosure on the date indicated below.

| | | |
|---|---|---|
| _____ | ____ | _____ ____ |
| Borrower  TERESA L. KOBECK | Date | Borrower                Date |
| | | |
| _____ | ____ | _____ ____ |
| Borrower | Date | Borrower                Date |
| | | |
| _____ | ____ | _____ ____ |
| Borrower | Date | Borrower                Date |

HAZ~~D~~   ~~~URANCE REQUIREMENTS & AUTH~~~IZ~~~ON

'Your Security Deed/Deed of Trust/Mortgage requires that you maintain a collectable fire insurance policy that meets with our standards. To assist you in understanding our minimum fire insurance requirements, the following information is provided.

1. POLICY - The original policy is required: Certified or Duplicate Copies are not acceptable, except as noted. For condominiums or customers covered under a master or blanket policy, a certified copy of the entire policy is acceptable, providing the certification has an original signature of an authorized agent. Each loan in a condominium must have an original certificate of insurance on that unit. On second mortgage loans, an original endorsement to show as second lienholder is required and a copy of the existing policy.

2. COMPANY RATING - All companies must be licensed to do business in the state in which the property is located and have a rating of B+/Class III or better as listed by A. M. Best or have a rating of A or better as listed by Demotech.

3. REINSURANCE - Reinsurance endorsements must state that any change of carrier during the life of the policy is subject to written notification and approval of lender.

4. NAME AND ADDRESS - Name(s) of insured or additional insured shall be the same as on the loan records. Property address or legal description must be complete.

5. AMOUNT OF COVERAGE - Coverage should be equal to the loan amount, (First Mortgage Loans), combined loan amount (Second Mortgage Loans) or full replacement value of the improvements as stated on the Real Estate Appraisal, whichever is less.

6. TYPE OF COVERAGE - One to four residential units must have fire, extended coverage, and Special Form. The policy cannot limit or exclude from coverage (in whole or in part) windstorm, hurricane, hail damages, or any other perils that are normally included under an extended coverage endorsement. If these limitations are included, a separate policy or endorsement from another insurer that provides adequate coverage must be obtained to cover the limitations or exclusions.

7. LENDERS LOSS PAYABLE ENDORSEMENT (438BFU) MUST BE INCLUDED IN FAVOR OF:

> Option One Mortgage Corporation, Its Successors and/or Assigns
> P. O. BOX 949, ORANGE, CALIFORNIA 92856-6949

8. DEDUCTIBLE - Maximum deductible clause should be the lesser of $1,000 or 1% of the policy face amount. When a policy provides for a separate wind loss deductible, that deductible may be the higher of $2,000 or 2% of the face amount of the policy.

9. TERM OF POLICY:
- MUST BE A MINIMUM OF ONE YEAR ON PURCHASES.
- ALL ONE YEAR POLICIES MUST BE PREPAID EVEN IF A BINDER IS SUBMITTED.
- ALL REFINANCE LOANS REQUIRE 60 DAYS REMAINING FROM DATE OF DISBURSEMENT OR A NEW ONE YEAR POLICY IS REQUIRED.

10. EFFECTIVE DATE of policy must be the same as or prior to the date of disbursement of funds for a new loan, or the expiration date of the existing policy for an existing loan.

11. SUBSTITUTION FEE of $5.00 is required if a new or renewal policy is submitted less than 30 days prior to the expiration date of the existing policy, if our Corporation holds the policy.

12. SIGNED AGENT AUTHORIZATION is required on policies for all new loans. A policy submitted on an existing loan only needs an authorization if there is a change of agents.

13. FLOOD INSURANCE - If the subject property is located in an area identified by the Federal Emergency Management Agency (FEMA) as a Special Flood Hazard Area (SFHA), an original flood insurance policy must be provided and maintained in force in the form and amount as required by the regulation. Coverage should be equal to the loan amount (First Mortgage Loans), combined loan amount (Second Mortgage Loans), full replacement value of the improvements as stated on the Real Estate Appraisal or a maximum of $250,000 ($35,000 maximum in an emergency status community), whichever is less. Allowable deductible is $1,000.00. A receipted invoice will be required for the initial premium of that policy.

14. FAILURE TO PROVIDE COVERAGE - If a policy does not meet all of our written requirements or if a notice of cancellation is received, it will be necessary for lender to immediately secure coverage to protect our interest, at the borrower's expense. LENDER WILL NOT RELEASE FUNDS ON ANY LOAN UNTIL WE ARE IN RECEIPT OF A POLICY/BINDER WHICH MEETS OUR REQUIREMENTS.

15. POSSESSION OF POLICY: Original insurance policy to be held by lender. We require an original insurance policy. On second mortgage loans, an original endorsement to show

> Option One Mortgage Corporation, Its Successors and/or Assigns        as second

lienholder is required and a copy of the existing policy.

16. BINDERS - Lender will accept a Binder provided it meets the above requirements; term is not less than 30 days and not more than 90 days; and a full years insurance premium is paid through Loan Closing/Escrow.

All insurance policies must be in our Branch office (for Funding states), or in the closing agent's office (for closing states) prior to disbursement of loan funds.

It is understood that in order to comply with new laws and regulations, the Corporation may solely elect to change or add to the above requirements from time to time without prior written notification.

You may, of course, obtain a policy from almost any insurance agent or broker. In this event, please be sure that the policy and insurance company meet with our requirements. We shall immediately return any policy which does not meet with our requirements or is not from the agency you have designated below (unless accompanied by new authorization signed by you).

You hereby voluntarily choose the following insurance agency:

_____

(Name of Insurance Agency)

and authorize Lender to accept a fire insurance policy from them for this loan. You understand that the choice of this insurance agency was not made a condition precedent to, and in no way affects, the granting of this loan.

Your signature hereto indicates your understanding and acceptance, and that you have received a copy of these requirements. Executed this_____day of_____, 20_____.

| | |
|---|---|
| _____ | _____ |
| TERESA L KOBECK                            Date | Date |
| _____ | _____ |
| Date | Date |
| _____ | _____ |
| Date | Date |

Loan Number: 391015183          Servicing Number: 001880870-9          Date: 07/13/05

## COLLATERAL PROTECTION INSURANCE DISCLOSURE

WARNING: UNLESS YOU PROVIDE US EVIDENCE OF THE INSURANCE COVERAGE AS REQUIRED BY OUR CONTRACT OR LOAN AGREEMENT, WE MAY PURCHASE INSURANCE AT YOUR EXPENSE TO PROTECT OUR INTEREST. IF THE COLLATERAL BECOMES DAMAGED, THE COVERAGE WE PURCHASE MAY NOT PAY ANY CLAIM YOU MAKE OR ANY CLAIM MADE AGAINST YOU. YOU MAY LATER CANCEL THIS COVERAGE BY PROVIDING EVIDENCE THAT YOU HAVE OBTAINED PROPERTY COVERAGE ELSEWHERE.

YOU ARE RESPONSIBLE FOR THE COST OF ANY INSURANCE PURCHASED BY US. THE COST OF THIS INSURANCE MAY BE ADDED TO YOUR CONTRACT OR LOAN BALANCE. IF THE COST IS ADDED TO YOUR CONTRACT OR LOAN BALANCE, THE INTEREST RATE ON THE UNDERLYING CONTRACT OR LOAN WILL APPLY TO THIS ADDED AMOUNT. THE EFFECTIVE DATE OF COVERAGE MAY BE THE DATE YOUR PRIOR COVERAGE LAPSED OR THE DATE YOU FAILED TO PROVIDE PROOF OF COVERAGE.

THE COVERAGE WE PURCHASE MAY BE CONSIDERABLY MORE EXPENSIVE THAN INSURANCE YOU CAN OBTAIN ON YOUR OWN OR MAY NOT SATISFY ANY NEED FOR THE PROPERTY DAMAGE COVERAGE OR ANY MANDATORY LIABILITY INSURANCE REQUIREMENTS IMPOSED BY APPLICABLE LAW. [Each reference to "you" and "your" shall refer to Borrower and each reference to "us" and "we" shall refer to Lender.]

In addition, if your collateral is identified as being located in a Special Flood Hazard Area (SFHA) at closing; or, if in the future, the Director of the Federal Emergency Management Agency (FEMA) issues a new flood map for your community that places your collateral in a SFHA, you will be required to purchase flood insurance and provide us with evidence of coverage, or we may purchase flood insurance as identified above.

Effective December 27, 2001, all new and revised Flood Insurance Rate maps (FIRMS) will incorporate "future" flood zones based upon a community's plans for development. The FIRMS will include additional data that will show "future" areas that will be removed from a SFHA and others that will be in a SFHA, assuming plans are completed as in the original specifications. Lower premiums may be available to homeowners who purchase flood insurance prior to the official SFHA designation.

Borrower TERESA L KOBECK _____     Borrower _____

Borrower _____     Borrower _____

Borrower _____     Borrower _____

Page 1 of 1                                                    USD3061.wp (12-02-02)

Tom Leatherwood  Shelby County Register of Deeds: Instr. # 07183869

PREPARED BY AND RETURN TO:
Joe M. Kirsch, Attorney
6055 Primacy Parkway, Suite 410
Memphis, TN  38119
901-767-5566
Fax: 901-761-5690

Name:  Teresa L. Kobeck,
S&K#:  07-12089

## SUBSTITUTE TRUSTEE'S DEED

WHEREAS, by Deed of Trust dated September 13, 2005, recorded in Instrument number 05154871 in the Register's Office of Shelby County, Tennessee, Teresa L Kobeck, a single woman, conveyed to Priority Trustee Services of Tennessee, L.L.C. the hereinafter described property for the purpose of securing the payment of the indebtedness and performance of the obligations therein mentioned and set forth; and,

WHEREAS, the holder of the debt secured appointed the undersigned as Substitute Trustee by Instrument of record in Instrument Number 07108581, in the Register's Office of Shelby County, Tennessee; and,

WHEREAS, default was made in the terms and conditions of said Deed of Trust, and the beneficiary requested the undersigned to advertise and sell said property under the terms and provisions of said Deed of Trust; and,

WHEREAS in pursuance of said request by said beneficiary, the said property was by the undersigned, advertised for sale in conformity with the terms and provisions of sale Deed of Trust by which advertisement the sale was appointed to be held on November 26, 2007, at the Shelby County Courthouse in Memphis, Tennessee, at 11:00am; and,

WHEREAS, at the time and place mentioned in said advertisement, the undersigned offered said property for sale at public outcry to the highest and best bidder for cash at which time the said property was struck off and sold to Wells Fargo Bank, N.A. as Trustee for Option One Mortgage Loan Trust 2006-1 Asset-Backed Certificates, Series 2006-1, whose address is Option One Mortgage Corporation, 6501 Irvine Center Dr, Irvine, California 92618 at and for the sum of $110,415.00, that being the highest and best bid offered; and,

WHEREAS, the purchaser, being the holder of the indebtedness has complied with the terms of the sale by paying into the hands of the undersigned Substitute Trustee the expenses of the sale, the balance being applied upon said indebtedness for which property was sold.

NOW, THEREFORE, in consideration of the premises and the payment by Wells Fargo Bank, N.A. as Trustee for Option One Mortgage Loan Trust 2006-1 Asset-Backed Certificates, Series 2006-1, the sum of money so paid, receipt of which is hereby acknowledged, the undersigned, Shapiro & Kirsch, LLP., as Substitute Trustee, does hereby grant, bargain, sell and convey to the said Wells Fargo Bank, N.A. as Trustee for Option One Mortgage Loan Trust 2006-1 Asset-Backed Certificates, Series 2006-1, its successors and assigns, in fee simple forever, the property above mentioned and now further described as being in Memphis, County of Shelby, State of Tennessee, to-wit:

Described property located in Shelby County, Tennessee, to wit:

Lot 83, Section A, Country Club Estates Subdivision, as shown on plat of record in Plat Book 18, Page 60, in the Register's Office for Shelby County, Tennessee which plat reference is hereby made for a more particular description of said property.

This legal description is identical with that in Deed of Trust recorded in Instrument number 05154871 in the Register's Office of Shelby County, Tennessee.

The grantor received title to the above-captioned real estate by Deed of Trust of record Instrument number 05154871 Register's Office of Shelby County, Tennessee.

The last deed of record is Warranty Deed, recorded in Instrument Number 05154870, in the Register's Office for Shelby County, Tennessee.

Subject to any unpaid taxes, subdivision restrictions, building lines and easements.

C

Tom Leatherwood, Shelby County Register of Deeds: Instr. # 07183869

TO HAVE AND TO HOLD the said real property above described, together with the privileges and appurtenances and hereditaments thereunto belonging or in any wise appertaining unto Wells Fargo Bank, N.A. as Trustee for Option One Mortgage Loan Trust 2006-1 Asset-Backed Certificates, Series 2006-1, its successors and assigns, in fee simple forever, to whom the said Shapiro & Kirsch, LLP., Substitute Trustee, warrants the title to the aforesaid real property against the lawful claims of all persons claiming by, through or under him, as such Substitute Trustee, but not further or otherwise.

IN WITNESS WHEREOF, the said Shapiro & Kirsch, LLP., Substitute Trustee, has hereunto set his hand and seal on the date written below.

Shapiro & Kirsch, LLP.

Denise D. Griffin, An Authorized Agent

STATE OF TENNESSEE
COUNTY OF SHELBY

On the 26Th day of November, 2007, before me, a Notary Public, in and for said State and County, personally appeared Denise D. Griffin, with whom I am personally acquainted, and who, upon oath acknowledged to be an Authorized Agent of Shapiro & Kirsch, L.L.P. the within named bargainor, a limited liability partnership, and that as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the Limited Liability Partnership.

WITNESS my hand and Notarial Seal at Office the day and year above written.

06|15|10
My commission expires:                          Notary Public

I, or we, hereby swear or affirm that to the best of affiant's knowledge, information, and belief, the actual consideration for this transfer is $110,415.00 which amount is equal to or greater than the amount which the property transferred would command at a fair and voluntary sale.

Affiant

Subscribed and sworn to before me on the date written above.

06|15|10
My commission expires:                          Notary Public

PROPERTY ADDRESS: 1140 Wilbec Road, Memphis, TN 38117

PROPERTY OWNER AND AGENCY RESPONSIBLE FOR PAYMENT OF TAXES:
Wells Fargo Bank, N.A. as Trustee for Option One Mortgage Loan Trust 2006-1 Asset-Backed Certificates, Series 2006-1
6501 Irvine Center Dr
Irvine, California 92618

S & K #:07-12089
Map & Parcel – 06701000000120

## HUD-1 CERTIFICATION

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

I, if the Purchaser/Borrower, acknowledge receipt in full of the loan proceeds, and if the Seller, acknowledge payment in full of the proceeds due me.

If this transaction involves a sale, I agree to adjus the tax prorations shown on the Settlement Statement when the actual ad valorem tax bill is rendered.

If this transaction involves a sale, as part of the consideration therefore, I agree that the contract between the parties is by reference incorporated herein and made a part hereof, and that the terms and conditions thereof shall survive the closing and shall not merge upon delivery of the deed.

I swear or affirm that I am of legal age and of sound mind, and that if I am the Seller, am a citizen of the United States of America, or if a corporation or other entity, am duly formed under the laws of the United States of America or one of the States thereof, and affirm my non-foreign status.

_____        _____
Borrower  Teresa L. Kobeck                             Seller  Guy Q. James

_____        _____
Borrower                                                        Seller

_____        _____
Borrower                                                        Seller

_____        _____
Borrower                                                        Seller

To the best of my knowledge the HUD-1 Settlement statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

American Title Company, Inc.

_____        Date: September 13, 2005
Settlement Agent

**WARNING:**  It is a crime to knowingly make false statements to the United States on this or any other similar form.  Penalties upon conviction can include a fine and imprisonment.  For detail see: Title 18: U.S. Code, Sections 1001 and Section 1010.